**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | |
| HOUSTON TRUCK WASH & | § | |
| LUBE, INC. | § | Case No. 24-34706 |
| | § | |
| Debtor | § | |
| | § | |

# Debtor's First Amended Plan of Reorganization Under Subchapter V Chapter 11

Houston Truck Wash & Lube, Inc. ("Houston Truck Wash" or the "Debtor") proposes this First Amended Plan of Reorganization (the "Plan") pursuant to 11 U.S.C. §§ 1190.

I.   Background

**A.  Description and History of the Debtor's Business**

The Debtor owns a truck wash that operates at 7821 Lyons Ave., Houston, Texas 77029. ("Truck Wash"). The Truck Wash leases the real property on which it operates ("Lease"). Prior to the filing, the landlord indicated that it intended to terminate the Lease. As a result, Houston Truck Wash filed this chapter 11 to preserve the Lease and preserve the business of the Truck Wash.

Houston Truck Wash values its assets at approximately $306,510.80, in the aggregate, which includes accounts receivable of approximately $12,000 on the filing date, inventory of approximately $10,564, office furniture, fixtures and equipment of approximately $18,675, and



trucks of about $260,000. The schedules of Houston Truck Wash show secured debts of approximately $463,921, priority claims of $169.21, and unsecured claims of approximately $298,393.[1]

The Debtor has approximately 41 remaining months on its lease agreement. The Debtor is current on its lease obligations with Carolyn Cook for the property at 7821 Lyons Ave. in Houston.

**B.  Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit 1.

**C.  Ability to Make Future Plan Payments and Operate Without Further Reorganization**

In order to confirm a plan, the Debtor must show that it will have enough cash over the life of the plan to make the required plan payments and operate the Debtor's business. The projections demonstrate that the Debtor will have sufficient funds to operate its business going forward.

The Debtor has provided projected financial information as Exhibit 2. The projections are based upon prior operating history and new business.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

---

[1] The claim for the lease filed by Carolyn Cook (Class 7) includes a priority claim of $15,193.55 for the rent of October 6-31, November, and December. Those payments were actually made prior to the filing of this case.

II.  Summary of Plan

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay Debtor's creditors from the cash flow generated in the ordinary course of the Debtor's business after confirmation.

This Plan provides for:      nine (9) classes of secured claims;

two (2) classes of unsecured claims, and

one (1) class of equity security holders.

Creditors holding allowed claims will receive distributions as set forth in this Plan.

This Plan also provides for the payment of administrative claims.

All creditors should refer to this Plan for information regarding the precise treatment of their claims.

The Debtor may prosecute claims against persons or entities that may owe money to the Debtor. Any recoveries will remain with and be an asset of the reorganized Debtor.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

III. Classification of Claims and Interests

| Class 1 | Class 1 consists of the allowed claim of Harris County, et. al. for $206.75.  The claim is for estimated *ad valorem* taxes for 2024 secured by Business Personal Property [Claim 1]. |
|---------|---|



| Class 2 | Class 2 consists of the allowed secured claim of City of Houston for $200.61. The claim is for estimated *ad valorem* taxes for 2024 secured by Business Personal Property, Vehicles [Claim 2]. |
|---|---|
| Class 3 | Class 3 consists of the allowed secured claim of Houston Community College System for $35.63. The claim is for estimated *ad valorem* taxes for 2024 secured by Business Personal Property, Vehicles [Claim 3]. |
| Class 4 | Class 4 consists of the allowed secured claim of Houston ISD for $335.50.  The claim is for estimated *ad valorem* taxes for 2024 secured by Business Personal Property, Vehicles [Claim 4]. |
| Class 5 | Class 5 consists of the secured claim of Ford Motor Credit Company, LLC for a truck loan.  The claim is secured by a 2024 Ford Super Duty F-350.  The claim was filed in the amount of $74,145.81 [Claim 5]. The unsecured amount will be paid as an unsecured claim. |
| Class 6 | Class 6 consists of the allowed secured claim of JP Morgan Chase Bank, N.A. for $207,996.97.  The claim is for money loaned (line of credit). The claim is secured by All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles [Claim 8].  The secured amount of the claim is listed as "Unknown". |
| Class 7 | Class 7 consists of the unsecured claim for Carolyn Cook for the commercial lease for the premises located at 7821 Lyons Ave., Houston, Texas 77029-1129.  [Claim 12].  The total claim amount is $82,000.00 (subject to amendment).  The claim is for the remaining lease term.  There is no claim for any arrearages. |
| Class 8 | Class 8 consists of the secured claim of Ally Financial for loans secured by two vehicles.  No claim has been filed. The Debtor has valued the collateral of a 2018 Ford F250 and 2023 GMC 3500 at $105,000.00. |
| Class 9 | Class 9 consists of the secured claim of AmeriCredit/GM Financial for a truck loan. No claim has been filed. The Debtor has valued the collateral of a 2017 Ford F250 at $30,000.00. |
| Class 10 | Class 10 consists of the secured claim of QL Tilting Trust Ltd. for a truck loan.  No claim has been filed. The Debtor has valued the collateral of a 2011 Peterbilt 388 at $55,000.00. |



| | |
|---|---|
| Class 11 | Class 11 consists of all other non-priority unsecured claims allowed under § 502 of the Code. The aggregate amount of Class 11 claims is approximately $216,393.49.<br><br>The claims in this class consist of the following:<br><br>American Express   $59,794.25- claim filed<br><br>Bank of America   $15,000- no claim filed<br><br>Texas Workforce Commission-$411.07-claim filed<br><br>ODK Capital, LLC -$703.42- Disputed-claim filed<br><br>ChemStation-$26,391.26- Disputed-claim filed<br><br>John W. Stone Oil Distributor, LLC-$40,000—Disputed-no claim filed<br><br>Key Performance Petroleum $50,000 – Disputed- – no claim filed<br><br>Santana and Associates -$3,010- no claim filed<br><br>Smitty Supply/ Latch Oil $15,000– Disputed-no claim filed<br><br>Wilco Supply LP -$3,500 – no claim filed<br><br>JP Morgan Chase – credit card-$2,583.49- claim filed<br><br>Total of claims listed above:  $216,393.49<br><br>Total of general unsecured claims without the disputed claims:  $84,298.81 |
| Class 12 | Class 12 consists of the equity security holders of the Debtor. |



IV. Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees

Under § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

Administrative Expense Claims

Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full in cash on the later of the Effective Date (as hereinafter defined), on the date such claim becomes an allowed claim, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

If the plan is confirmed under section 1191(a), the Debtor will pay post-confirmation fees and expenses incurred by Baker & Associates in the ordinary course of business without the need for Court approval of such fees and expenses. If the plan is confirmed under section 1191(b), the Debtor will pay post-confirmation fees and expenses incurred by Baker & Associates after approval by the bankruptcy court.

Payment to the Subpart V Trustee – Melissa Haselden has been appointed as the Subpart V Trustee in this case ("Subpart V Trustee"). Debtor shall pay allowed Subpart V Trustee fees and expenses as set forth in the projections and budget. If the Subpart V Trustee does not timely receive tender of the payments set forth above, the Subpart V Trustee shall send written notice by Regular Mail, by Email, and by Certified Return Receipt Requested Mail, postage prepaid, to the Debtor and Counsel for the Debtor, and allow Debtor a 30-day period from the date of such written notice to cure such delinquent payments. In the event Debtor fails to cure such delinquent

payments within such 30-day period, the Subpart V Trustee shall be allowed to take any and all steps necessary to exercise any and all rights available remedies under applicable law. Upon entry of a final order of discharge for the Debtor, this notice requirement shall terminate and the parties shall thereafter be governed by the notice provisions set forth under the laws of the State of Texas.

The subpart V Trustee fees will be paid on the Effective Date, subject to the approval of the fees and expenses by the bankruptcy court.

### Other administrative expenses

The claim for the lease filed by Carolyn Cook includes a priority claim of $15,193.55 for the rent of October 6-31, November, and December.  Those payments have already been made. The Debtor will object to the claim for unpaid pre-petition and post-petition rent.

## Priority Tax Claims

The Texas Workforce Commission has filed a claim which includes a priority amount of $169.21 [Claim No. 9].  The priority amount owed to Texas Workforce Commission shall be paid on the Effective Date and no later than May 6, 2025.

## Statutory Fees

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date have been paid or will be paid on the Effective Date.

V.  Treatment of Claims and Interests Under the Plan

Claims and interests will be treated as follows under this Plan:  Filing date of October 6, 2024.

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 –Harris County, et. al. for estimated *ad valorem* taxes for 2024 secured by Business Personal Property. | Impaired | Debtor will pay $206.75 to Class 1 by no later than October 6, 2027. The claim will be paid in approximately equal monthly installments at 12% per annum interest [Claim 1].  The Debtor may pre-pay this claim at any time. |
| Class 2 - City of Houston for estimated *ad valorem* taxes for 2024 secured by Business Personal Property, Vehicles. | Impaired | Debtor will pay $200.61 to Class 2 by no later than October 6, 2027. The claim will be paid in approximately equal monthly installments at 12% per annum interest [Claim 2]. The Debtor may pre-pay this claim at any time. |
| Class 3- Houston Community College System for estimated *ad valorem* taxes for 2024 secured by Business Personal Property, Vehicles at 7821 Lyons Ave., Houston, Texas 77029. | Impaired | Debtor will pay $35.63 to Class 3 by no later than October 6, 2025. The claim will be paid in approximately equal monthly installments at 12% per annum interest [Claim 3]. The Debtor may pre-pay this claim at any time. |
| Class 4 - Houston ISD for estimated *ad valorem* taxes for 2024 secured by Business Personal Property, Vehicles | Impaired | Debtor will pay $335.50 to Class 4 by no later than October 6, 2027. The claim will be paid in approximately equal monthly installments at 12% per annum interest [Claim 4]. The Debtor may pre-pay this claim at any time. |
| Class 5 -Ford Motor Credit Company, LLC ("Ford") for truck loan secured by 2024 Ford Super Duty F-350. | Unimpaired | Debtor has determined that the Class 5 Claim is fully secured. Debtor will continue to pay the Class 5 loan in accordance with the existing promissory note and payment schedule.  Within thirty (30) days of full payment of amounts due under the loan secured by the vehicle, the Class 5 creditor must execute and deliver to the Debtor a release of all liens, security interests and encumbrances on the vehicle that is security for this loan. |



| | | The liens and encumbrances for the Class 5 creditor on the vehicle shall continue and shall remain enforceable by the Class 5 Creditor until fully paid. [Claim 5]. The Class 5 Claim has no arrearages or prepetition amounts owed. |
|---|---|---|
| Class 6- JP Morgan Chase Bank, N.A. ("Chase") for money loaned (line of credit) secured by All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles [Claim 8] | Impaired | Debtor will pay $207,996.97 to Class 6 within sixty (60) months or less of the Effective Date. The claim will be paid in installments as set forth in the projections with this plan at the rate of 5% per annum. [Claim 8]. Such amounts shall be in full satisfaction of the secured Class 6 Claim. Within thirty (30) days of completion of payments to Class 6, the Class 6 creditor must execute and deliver to the Debtor release of all liens, security interests and encumbrances on any property of the Debtor and any collateral for any loans to the Debtor. The liens and encumbrances for the Class 6 creditor on any property of the Debtor and any collateral for any loans shall continue and shall remain enforceable by the Class 6 Creditor until fully paid. Debtor may pay this class in full at any time after the Effective Date. |
| Class 7 – Carolyn Cook as the representative of the landlord at 7821 Lyons | Impaired | Class 7 consists of the allowed unsecured claim of Carolyn Cook as the landlord representative for lease arrears pursuant to the commercial lease concerning premises located at 7821 Lyons Ave., Houston, Texas 77029-1129. The Debtor believes that it is current on its rental obligations and no lease arrearages are owed. [Claim 12]. Even though a claim has been filed, the total claim amount is $82,000 for future unpaid rent. The Debtor is current on the payments to the landlord and intends on objecting to the claim of the landlord for any prepetition amounts. The Debtor may pay amounts to Class 7 in full at any time during the plan term. |
| Class 8 - Ally Financial ("Ally") secured by 2018 Ford F250 and 2023 GMC 3500. | Unimpaired | Debtor has determined that the Class 8 Claim is fully secured. Debtor will continue to pay the Class 8 loan in accordance with the existing promissory note and payment schedule. Within thirty (30) days of full payment of amounts due under the loan secured by the vehicle, the Class 8 creditor must execute and deliver to |



| | | |
|---|---|---|
| | | the Debtor a release of all liens, security interests and encumbrances on the vehicle that is security for this loan. The liens and encumbrances for the Class 8 creditor on the vehicle shall continue and shall remain enforceable by the Class 8 Creditor until fully paid.  The Class 8 Claim has no arrearages or prepetition amounts owed. |
| Class 9 AmeriCredit/GM Financial ("AmeriCredit") for car loan secured by 2017 Ford F250. | Unimpaired | Debtor has determined that the Class 9 Claim is fully secured. Debtor will continue to pay the Class 9 loan in accordance with the existing promissory note and payment schedule.  Within thirty (30) days of full payment of amounts due under the loan secured by the vehicle, the Class 9 creditor must execute and deliver to the Debtor a release of all liens, security interests and encumbrances on the vehicle that is security for this loan. The liens and encumbrances for the Class 9 creditor on the vehicle shall continue and shall remain enforceable by the Class 9 Creditor until fully paid.  The Class 9 Claim has no arrearages or prepetition amounts owed. |
| Class 10- QL Tilting Trust Ltd. for a truck loan secured by 2011 Peterbilt 388 | Impaired | Debtor has determined that the Class 10 Claim is fully secured. Debtor will continue to pay the Class 10 loan in accordance with the existing promissory note and payment schedule.  Within thirty (30) days of full payment of amounts due under the loan secured by the vehicle, the Class 10 creditor must execute and deliver to the Debtor a release of all liens, security interests and encumbrances on the vehicle that is security for this loan. The liens and encumbrances for the Class 10 creditor on the vehicle shall continue and shall remain enforceable by the Class 10 Creditor until fully paid.  The Class 10 Claim has no arrearages or prepetition amounts owed. |
| Class 11- Unsecured Creditors | Impaired | The Debtor will pay the projected disposable income following the Effective Date during the term of the plan (for time periods between 36 and 60 months) to creditors in this class with allowed claims in the amount set forth on the projections with this plan; provided that if the Debtor pays amounts due to all of the other Classes in full the Debtor may complete this plan earlier than 60 months after payments to all the other Classes. Debtor |



| | | |
|---|---|---|
| | | may pay such amounts quarterly starting with the first full calendar quarter after the Effective Date. Unsecured creditors will get payments of projected disposable income for a minimum of at least thirty-six (36) months following the Effective Date.  If all other classes are paid in full in less than sixty (60) months, then the Debtor may complete this plan in less than sixty (60) months so long as the creditors in Class 11 get payments equivalent to at least thirty-six (36) months. |
| Class 12 | Unimpaired | The equity security holders will retain the interest in the Debtor. |

**Definitions:**

**Disposable Income (from section 1191(d) of the Bankruptcy Code)—** The term "disposable income" means the income that is received by the debtor and that is not reasonably necessary to be expended—
**(1)** for—
**(A)** the maintenance or support of the debtor or a dependent of the debtor; or
**(B)** a domestic support obligation that first becomes payable after the date of the filing of the petition; or
**(2)** for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

Items (1)(A) and (B) are not applicable to a case for an entity.


**Funds for Payment of Administrative Expense Claims and Unsecured Claims.**

The Debtor will pay the administrative expenses and the other classes as set forth on the

projections.   The Debtor may prepay administrative expenses if the Debtor has sufficient funds to

make such payments.

**Provision Applicable to the Texas Comptroller of Public Accounts**



Debtor does not believe that it owes any amounts to the Texas Comptroller of Public Accounts ("Comptroller").  No claim has been filed by the Comptroller.  Therefore, no amounts will be paid to the Comptroller under this Plan.

## VI.    **Provisions Applicable to All Classes-Default**

If the reorganized Debtor fails to timely make the required plan payments to any of the creditors, the reorganized Debtor will be considered to have defaulted under the Plan as to such creditor. If the reorganized Debtor defaults under the Plan as to a creditor, then such creditor may send a written notice of the default (a "Default Notice") to the reorganized Debtor and counsel for the Debtor by Regular Mail, by email, and by Certified Mail Return Receipt requested, postage prepaid. (emails for the Debtor: darrell@houstonruckwash.com; email for counsel for the Debtor: courtdocs@bakerassociates.net; address for Debtor is 7821 Lyons Ave., Houston, Texas 77029 and counsel for the Debtor at 950 Echo Lane, Ste 300, Houston, Texas 77024).  If the reorganized Debtor does not cure the default within 30 days after receiving the written Default Notice, such creditor with a default may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.

**Bar Date and Payments**

**The Debtor will only pay creditors that are listed in the schedules of the Debtor as undisputed, non-contingent, and liquidated. If a creditor is listed as disputed, contingent, or unliquidated, then the creditor must file a claim by the bar date. If no claim is filed by the bar date, then no payment will be made to such creditor, but the discharge provided in this Plan and the bankruptcy code will discharge the debt of such creditor. Creditors whose claims are listed as disputed, contingent, or unliquidated will receive no distribution unless**

---



**such creditor files a claim and the claim is allowed.** Even if a creditor files a claim, the Debtor may still dispute the claim.

### VII.    Provisions for Subpart V Chapter 11 Trustee and Confirmation under section 1191(b)

The Debtor requests consent to act as the disbursing agent if the plan is confirmed under section 1191(b).

**Quarterly Financial Reporting**. If the plan is confirmed under section 1191(b), then until the Debtor has completed all payments under this Plan, the reorganized Debtor shall file with the Court and provide to the Subpart V Trustee no later than 21 days after the end of each quarter, post-confirmation quarterly financial reports (the "Quarterly Reports") for each quarter (or portion thereof) of the Plan term. The Quarterly Reports shall: (i) be generated by the Debtor's management or an accounting or finance professional retained by the Debtor; and (ii) contain the information required by the U.S. Trustee's forms and office.

**Tax Returns**. If the plan is confirmed under section 1191(b), then until the Debtor has completed all payments under this Plan, Debtor shall timely file all tax returns and make all tax payments and deposits, if any, when due. For each tax return that becomes due after entry of the order confirming the Plan but before the Plan is substantially consummated, Debtor shall, within fourteen (14) days of filing the return, provide the Subpart V Trustee with a complete copy of the tax return, including all schedules and attachments.

**Reorganized Debtor's Remittance**. If the plan is confirmed under section 1191(b) and if the Debtor is not the disbursing agent, then the Debtor shall remit to the Subpart V Trustee the funds for the payments of the allowed claims in this plan. Payments of administrative claims under

---

this Plan shall be made in a manner that is mutually agreeable by and between the Debtor, administrative claimants, and the Subpart V Trustee. The Reorganized Debtor shall promptly contact the Subpart V Trustee regarding the disposition of any checks by Reorganized Debtor made payable to the Subpart V Trustee but not negotiated.  The Debtor shall calculate the amounts to be paid to creditors in this plan and shall provide such calculations to the Subpart V Trustee at approximately the same time as the funds are delivered to the Subpart V Trustee.

**Distributions to Creditors.** If the plan is confirmed under section 1191(b), then distributions to allowed claims will be made in accordance with the payment calculations provided by the Debtor. The Subpart V Trustee is not responsible for calculating or correcting the payment amounts due under the Plan.

**Disbursing Agent.** The Debtor shall serve as the disbursing agent if the plan is confirmed under 1191(a).

In the event the plan is confirmed under 1191(b), the Debtor requests a waiver of the requirement that the Subpart V Trustee serve as the disbursing agent.  The Debtor has approximately 22 creditors in total and can manage and pay the creditors as necessary.  In the event the waiver is not granted, the Subchapter V Trustee shall serve as disbursing agent for the creditors and shall be discharged upon completion of the final disbursement to all the creditors. Funds from any disbursement check where the check remains unnegotiated for more than 60 days, may be redistributed *pro rata* to other unsecured creditors, as provided for under the Plan, or may be placed with this Court's unclaimed funds register pursuant to 28 U.S.C. § 2042, at the discretion of the Debtor (or the Subchapter V Trustee if the Debtor is not the disbursing agent). The Reorganized

Debtor will have the right to pursue the recovery of any disbursements made on account of a claim which is subsequently withdrawn and/or satisfied.

If the plan is confirmed under section 1191(b) and the Debtor is not authorized to be the disbursing agent, the following shall also apply:

a.  The Subchapter V Trustee shall be the disbursing agent for all distributions made under the plan. The Debtor shall be required to pay a post-confirmation retainer to the Subpart V Trustee of $500 monthly. As disbursing agent, the Trustee may pay her post-confirmation fees without further order of the Court on 14-days negative notice. The Subpart V Trustee may file a Notice Regarding Payment of Fees, which shall include fees and expenses incurred by the trustee on a quarterly basis. If no party objects to the notice, after 14 days, the Subpart V Trustee may pay the fees and expenses. If a party in interest does object, the Court will set a hearing to determine whether the fees and expenses incurred by the Subpart V Trustee are reasonable and necessary;

b. Payments by the Debtor to the Subchapter V Trustee are due by the 15th of the month, with the first plan payment due on the 15th of the month following confirmation. The Subpart V Trustee will begin making distributions under the plan within 60 days of plan confirmation;

c. The payments to unsecured creditors will be escrowed by the Subchapter V Trustee or the Debtor and paid on at least a calendar quarterly basis;

d. The Debtor shall provide the Subpart V Trustee access to information and access otherwise to fulfill all duties pursuant to §1183;

e. Default remedies under the Plan include liquidation and/or removal of the Debtor, and the Court shall retain jurisdiction to enforce and interpret the Plan; and

f. Any modification of plan payments must be filed and noticed by the Debtor or by Subpart V Trustee.

If the plan is confirmed under 1191(a) or is confirmed under 1191(b) and Debtor is allowed to serve as the disbursing agent, the payments to unsecured creditors will be escrowed by the Debtor and paid on at least a calendar quarterly basis. The first plan payment will be due on the 15th of the month following confirmation.

The Debtor will be deemed to have met its payment obligations upon payment of the classes of claims as set forth herein.

The Subchapter V Trustee shall be discharged upon Substantial Consummation of the Plan unless the Subchapter V Trustee serves as disbursing agent. If the latter occurs, the Subpart V Trustee shall be discharged upon completion of the final disbursements to the creditors in this plan.

**Disbursement Reports**. If the plan is confirmed under section 1191(b), then the Debtor (or the Subchapter V Trustee if the Debtor is not the disbursing agent) shall provide all required reports to the United States Trustee for review, during the period in which the Debtor (or the Subchapter V Trustee if the Debtor is not the disbursing agent) continues to make plan payments.

Upon completion of all plan payments, the Debtor (or the Subchapter V Trustee if the Debtor is not the disbursing agent) will submit the final report and final account of the administration of the estate to the United States Trustee for review pursuant to section 1183(b)(1). After review, the final report and account will be filed with the Court.

If the plan is confirmed under section 1191(a), no further reports must be filed by the Debtor.

**Notices**. The Debtor (or the Subchapter V Trustee if the Debtor is not the disbursing agent) may limit notice of any and all reports, document, pleading or other filing related to this case to those parties directly affected and to those interested parties which have filed a notice of appearance or proofs of claim, as necessary. The Debtor (or the Subchapter V Trustee if the Debtor is not the disbursing agent) shall be under no obligation to serve parties which are neither affected by any report, document, pleading or other filing or have made no appearance whatsoever before this Court

**Payments and Distributions on Disputed Claims**. Except as otherwise provided in the Plan, no partial Plan Payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. For purposes of clarity, each class's claimants will not be entitled to a distribution until all claims within the applicable class are final. Unless otherwise agreed to by the reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order. The provisions

of this section are not intended to restrict payment of any unclassified claims which are not disputed.

### VIII.          Subchapter V Trustee Obligations.

**(a) Obligations Related to the Pursuit of Causes of Action**. The Subchapter V Trustee shall not have any right or obligation to pursue and/or manage the reorganized Debtor's pursuit of Causes of Action. Rather, the pursuit and management of Causes of Action shall be coordinated by the reorganized Debtor and the attorney retained by the reorganized Debtor to pursue Causes of Action, if any.

**(b) Administration of the Estate.** If the plan is confirmed under section 1191(b) and the Debtor is not the disbursing agent, then the Subchapter V Trustee shall file all reports required by the United States Trustee in the manner prescribed by the United States Trustee Program. Upon discharge of the Subchapter V Trustee, the Subchapter V Trustee shall file his final report and seek a discharge of his duties as Subchapter V Trustee.

**Retention of Jurisdiction**. The Court retains jurisdiction for any and all matters that may come before the Court in the administration of the Plan and pursuant to the Order of Confirmation, specifically including, but not limited to, the jurisdiction to determine all objections that have heretofore been or may be filed to claims of creditors; to fix and award all compensation to parties who may be so entitled; to hear and determine all questions concerning the assets or property of the debtors, including any questions relating to any sums of money, services, or property due to the debtor; and determine all matters of any nature or type necessary or appropriate to carry out the Plan.

## IX.        Allowance and Disallowance of Claims

**Disputed Claims**

A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, as to which, either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

As of the submission of this plan, twelve (12) claims have been filed. The Debtor reserves the right to dispute any claims filed by any creditors for up to forty-five (45) days after the Effective Date.

At the Initial Debtor Interview on November 13, 2024, the U.S. Trustee representative had a UCC search with 2 UCC filings.  One of the creditors is On Deck Capital.  The UCC-1 for On Deck Capital has a Dallas address. The Dallas address is for a truck wash in Dallas.  The Debtor does not believe that it has any loans with OnDeck Capital and it is not aware of any loans for a Dallas truck wash.  No payments will be made to OnDeck Capital.  Upon confirmation, (i) the Debtor is authorized to file a release of the UCC-1 statement of OnDeck Capital, and (ii) confirmation shall be a determination that no funds are owed by the Debtor to OnDeck Capital.

<u>Distribution on a Disputed Claim</u>

No distribution will be made on a disputed claim unless such claim is allowed by a final non-appealable order. The Debtor will only pay on allowed claims.

**Settlement of Disputed Claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## X.  Provisions for Executory Contracts and Unexpired Leases

The Debtor will assume the executory contracts with Charles W. Cook, Trustee for the lease of the real property at 7821 Lyons Avenue and contract with Cirro Energy.  Except for executory contracts and unexpired leases that have been assumed under this Plan or by order of the court before the Effective Date, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. The Debtor is not aware of any other existing executory contracts.

A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

## XI. Means for Implementation of the Plan

The Debtor will retain the property of the bankruptcy estate. The Debtor will make the payments as set forth in the Projections to either the creditors or to the Subchapter V Trustee.

## XII.    Emergency/Reserve Fund

The net amount remaining after plan payments, if any, will be placed in the Emergency/Reserve Fund.  If funds remain in the Emergency/Reserve Fund after the conclusion

of this plan, the Debtor will distribute 50% of such funds for creditors in Class 11. The Debtor will be permitted to retain the other 50% as necessary expenses for ongoing operations after completion of the payments.

### XIII.   General Provisions

**Definitions and Rules of Construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**Effective Date**

The effective date ("Effective Date") of this Plan is the date on which the confirmation order becomes a final order no longer subject to appeal. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

**Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Binding Effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**Controlling Effect**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Retention of Jurisdiction**

The Bankruptcy Court will retain exclusive jurisdiction of the case after the confirmation date with respect to the parties to, and the subject matter of, this Plan and the claims, applications, orders, damages, and other events as described in the Plan.

## XIV.        Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt: (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, on the first date on which the Administrative Claims, priority claims, and allowed claims in all classes have each been paid in full in accordance with the terms of this Plan. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the

Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), upon payment by the Debtor of the Administrative Claims, priority claims, and allowed claims in all classes in accordance with the terms of this Plan, the Debtor may apply for the entry of an order of discharge and upon confirmation that the payments have been made, the Bankruptcy Court shall enter an order of discharge under section 1192.

**Attachments:**

1. Liquidation Analysis
2. Projections – payments to creditors under the plan are shown in red
3. Liquidation Chart

Dated: January 8, 2025

*/s/ Darrell Palmer*
Darrell Palmer
President

ATTORNEY FOR THE DEBTOR:
Reese Baker
TX Bar No. 01587700
Nikie Marie López-Pagán
TX Bar No. 24090233
Baker & Associates
950 Echo Lane, Ste. 300
Houston, Texas 77024
(713) 979-2279
(713) 869-9100 Fax